The conflicts of interest that were alleged in this case literally cry out for some explanation. Why was Jess Rodrigues never told that the Resolution Trust Corporation, which had initiated his prosecution and was acting as receiver of his savings and loan company, was at the very moment that this law firm was undertaking to defend him being represented before this court in a pending appeal? I take it your specific point is with respect to the settlement. Is that correct? Well, we're contending that this conflict did affect the conduct of counsel at trial, and the allegation of the effect that it had was that the settlement with the RTC was never used to cross-examine the two key witnesses against the defendant. Yes. But how would you connect up whatever was covered in the settlement with the relevant issues here? I had some difficulty making that connection from the briefs. Well, I... In other words, to establish the actual conflict. Yes. Well, the actual conflict arises from the divided loyalty to the RTC versus the loyalty to Mr. Rodrigues in the sense that... The Collar case requires a little stronger showing than that, does it not? Well, here there was evidence to really go after the RTC with respect to their acceptance of a settlement that actually gave to these two witnesses a $7 million arbitration award. That was never really brought out in cross-examining these witnesses, what they had to gain from their cooperation with the RTC and their giving of the testimony against Mr. Rodrigues. That's conflict number one. And it just gets worse from there. Conflict number two is that at the very moment Mr. Rodrigues is suing the KMPG accounting firm for negligence in not completing an audit that would be very relevant to his defense, the law firm that is defending him is representing KPMG. And then it gets even worse, that the law firm that is representing him employs the United States attorney who declined prosecution in this case. Mr. Rodrigues is led to believe that that relationship will actually enhance his defense. He is never told that the rules of ethics will require that Mr. Ruscinello actually be isolated and that his lawyer would even be precluded from communicating with Mr. Ruscinello. That particular point is positive? How can we credit the expectations of the defendant here in terms of access to information to which he was not entitled under any theory? Well, I don't agree that he's not entitled to it under any theory. In fact, he was disadvantaged by being represented by a lawyer who's a partner of Mr. Ruscinello who can't even talk to Mr. Ruscinello. If he was represented by another lawyer, that lawyer wouldn't at least be precluded from communicating with Mr. Ruscinello. But Ruscinello couldn't have said anything. He was barred. Well, Mr. Ruscinello actually wrote a letter declining prosecution in the case. Mr. Ruscinello met with Mr. Rodrigues' former lawyer, Mr. Alioto, and could have corroborated Mr. Alioto's communications to Mr. Rodrigues. All of this was relevant to his state of mind with respect to... State of mind to what? His lawyer will tell him that ethically, Ruscinello can't communicate anything to him. They've got to build a wall around. Every competent lawyer knows that. So how does your client get an expectation that somebody's going to be unethical and that he can challenge the case because the person is ethical? Well, my client doesn't know that communications between the two lawyers in the same law firm are unethical. In fact, my client... He has a lawyer. His lawyer can tell him. Why is there any – I just don't see the... Well, that's the whole point, Your Honor. His lawyer never did tell him. Your first two issues are very good issues. It just seems you're really diminishing your case by hanging on to this third one. It just doesn't – I don't see how it fits in. All right. Well, I agree with you. The first two issues alone will require a reversal in this case. But with respect to the Ruscinello conflict, what our client objects to is that he was never told. He was never informed of what limitations there would be on communication. But let's go back to those first two conflicts. They are concurrent conflicts. That is, they are... KPMG. What can you show in terms of the time overlap? Wasn't the KPMG representation complete or just about complete before this representation with... Well, they're contending that the RTC representation was just about complete. But the KPMG representation was undertaken six months after the defense of Mr. Rodriguez was undertaken, and then a second case 18 months after the representation. So these are conflicts... I guess what I'm focusing on is the overlap. How can you establish that there was an overlap here that would in fact give rise to an actual conflict as to the KPMG? Yes. The affidavit filed by the Cooley lawyer indicated the time frame in which the representation of KPMG was undertaken. And it clearly was six months after the defense of Mr. Rodriguez was undertaken for the first case and 18 months after the representation of Mr. Rodriguez was undertaken with respect to the second case. Now, what the government does contend with respect to the RTC conflict was that the case was winding down. They were just cleaning up a few last-minute details with respect to the case. But there is no exception that allows a lawyer to represent conflicting interests if one of the cases is minor or brief. What was the RTC's involvement with your client and his conduct? The RTC was the receiver that took over Saratoga Savings and Loan. The RTC was the one that negotiated the settlements with the complaining witnesses who testified against the defendant. The RTC was actually alleged to be a victim of the crime that ---- Was there anything in the settlement that said those witnesses were obligated to testify or anything of that sort? No. It's not directly referred to in the settlement. But that certainly would not preclude the lawyer from cross-examining and vigorously challenging the credibility of these witnesses based on their expectations. It's really a question of what they expected in terms of favorable treatment from the RTC. And what about ---- was there any relationship between the RTC and the properties that were at issue here? And I'm sorry? The properties that were at issue here. The RTC was not created until 18 ---- until 1989. And that was after most of the conduct that's charged against Mr. Rodriguez had already occurred. Well, the RTC was actually appointed to be the receiver of Saratoga Savings and Loan. And the prosecutor was actually ---- or the entire prosecution was initiated by the RTC. Initially, prosecution had been declined. And the RTC went back to federal authorities and urged them to undertake this prosecution. The RTC was alleged, I believe in Count 19, to be a victim of the crime that Mr. Rodriguez was accused of. So clearly, there was a direct conflict. Counsel, you're down to about half a minute. Would you like to reserve? I would like to reserve that. Thank you. So, Ms. Harris? Good morning. May it please the Court, my name is Robin Harris. I'm an assistant United States attorney from the Northern District of California. And I would like to address each of the three alleged conflicts and to point out what the state of the law is, which is that there must be an actual conflict of interest before the Sullivan Standard is even triggered. And with regard to the alleged conflict concerning the RTC, there is no showing at all that the .4 tenths of an hour that lawyers other than Mr. Rodriguez's counsel billed during the overlapping period of time had anything whatsoever to do with Mr. Rodriguez. But beyond that, what Mr. Ullman just said to this panel is that the conflict and the alleged deficient performance related to a failure on the part of Mr. Rodriguez's lawyer to vigorously cross-examine two trial witnesses, Tate and Lazarus, concerning an agreement with the RTC. And that is not true. What does the record show in terms of disclosure of the representation of these other, at least of the other two clients, and the disclosure of the fact of Mr. Russinello? Was there any disclosure at all, or did this information come to light later on? With regard to Mr. Russinello, the information concerning Mr. Russinello's affiliation with Cooley Godward was clearly disclosed, and Mr. Rodriguez concedes that both below and to this Court. With regard to the RTC and KPMG, that was first raised in the petition, and there's no factual showing. Mr. Rodriguez has alleged that it was not disclosed to him, and there's no conflicting showing. And your argument is that under Kyler, that's not enough to show actual conflict? Correct. And actual conflict is one that's not just a theoretical division of loyalties, and the Supreme Court has recently made that clear in the Mickens case. And here, at best, with regard to the RTC in that four-tenths of an hour, there was a theoretical division of loyalties. I would also like to address the KPMG conflict, and there, there's no conflict at all, although there was an overlap. I think what the Court has to do is look at what the nature of that work was, and to provide individual estate planning advice, presumably drafting a will to three individual employees of a large accounting firm. Maybe ethical considerations have changed since I was a practicing lawyer, and this may be old school, but when I was a practicing lawyer, I was responsible to know and was considered to know everything that happens within the firm. And if I know that we represent another client and there's a conflict, I was obliged to respond that there is a conflict to my client. The problem we have here is over whether there should have been a hearing. That is, was there enough shown that there should have been a hearing in the court so that he could show the things that you claim now should have been shown? It seems to me an argument can be made. I haven't made up my mind. Counsel's response is a little premature. But it seems to me that there's a real issue here of whether or not there was sufficient shown for a hearing. That is, prima facie, you've got a lawyer representing three clients, and that in a case two of them might have been impacted upon. He does not make any disclosure that he represents them, and that they should have had an opportunity to have a hearing, that there was an abuse of discretion in not holding a hearing. That's where I'd like to have you focus your argument. Why wasn't there sufficient showing just by the very nature of the representation, not the small amount of billing, but just the very nature of the representation? Why wasn't that sufficient for a hearing? Well, I think for two reasons. The first, I would like to focus on the fact that there was a hearing. Judge White did have an evidentiary hearing. The evidentiary hearing involved testimony by Mr. Neal, who was Mr. Rodriguez's trial counsel. And at that evidentiary hearing, Mr. Neal was extensively questioned and cross-examined concerning his trial strategy and the cross-examination of Tate and Lozares. So with regard to the conflict, the alleged conflict on the RTC, Judge White did hold an evidentiary hearing, not specifically directed at that issue, but all of those facts were brought to light during the evidentiary hearing. And Judge White, after hearing Mr. Neal testify, found that Mr. Neal vigorously cross-examined Tate and Lozares and that his strategic reasons for not using the RTC settlement made perfect sense in the context of the litigation. So with regard to the RTC, there was an evidentiary hearing. Although it wasn't specifically directed at that conflict, what actually transpired was a hearing on that conflict. With regard to KPMG, I'm not sure that I understand the court's concern. It seems like the mere fact that other lawyers provided estate planning advice to individuals that were a member of that large entity is insufficient to show that there was an actual conflict of interest, meaning adverse interests, between Mr. Rodriguez and those estate planning individual clients, as opposed to KPMG, an accounting entity. I would also point out that the state of the record is, and this is Excerpt of Record, page 3, I believe, that ---- Back to the KPMG. Is it clear that the representation was to the members of the KPMG firm in their individual capacities or to clients of KPMG who had estate planning issues or referred to them? In other words, is it clear that under no circumstances did the firm ever represent the accounting firm itself? Yes, that is clear, and that's at Excerpt of Record, page 9, paragraph 13 of the declaration that was filed, wherein Cooley Godward was engaged by KPMG to provide estate planning advice to two KPMG individual clients. So, in other words, clients of KPMG. And that's Excerpt of Record, page 9, and then also Excerpt of Record, page 10, paragraph 14 of the declaration. So to find that that is an actual conflict of interest where Cooley Godward law firm represented adverse interests, I think is an enormous leap and unsupported by the Supreme Court precedent in this area. The question simply is, what are the adverse interests? And in that regard, I think we have to look at Mr. Rodriguez's own submission, which is that the lawsuit that he filed for malpractice against the accounting entity, KPMG, was filed in 1992. There's no showing by Mr. Rodriguez as to whether that lawsuit was active at the time that Cooley Godward provided individual advice to KPMG's clients, and that was Mr. Rodriguez's obligation to provide the district court, and he didn't do that. All that we know is that a lawsuit was filed in 1992 against KPMG as an entity for accounting malpractice, and this estate planning advice to individual clients of an accounting firm doesn't put KPMG and Mr. Rodriguez in an adverse position. So your position is that even accepting all those facts, there's no reason for a hearing because there cannot be a conflict? That's correct, that there wasn't a conflict and that Judge White, what he had before him were declarations that gave rise to a legal question. Rodriguez did not submit a declaration which controverted the submission from the Cooley Godward law firm concerning the nature and extent of the alleged representation. So all Judge White needed to resolve is what is the legal effect based on the submissions that he had before him, and he did resolve that. The issue with regard to the RTC and the four-tenths of an hour that was billed during the dual representation was, in fact, and that is what Rodriguez is pointing to as the ostensible prejudice as a result of the so-called conflict. There was not, however, an evidentiary hearing concerning KPMG, and on the state of the record below, there was no basis to hold an evidentiary hearing. Judge White did give Mr. Rodriguez an opportunity to supplement the record below, which was more than Mr. Rodriguez was entitled to under Title 28. Judge White gave him an incredible amount of process, more so than most criminal defendants get. And we had an extensive evidentiary hearing, but based on what the record was as presented to Judge White, he certainly didn't abuse his discretion in not expanding an already extensive evidentiary hearing. If there are no further questions. No further questions. Counsel, thank you. Mr. Ullman, you have some reserved time. Not a lot, but some reserved time. I just want to directly respond to two questions that came up during opposing counsel's argument. Number one, when did the disclosure take place? When did Mr. Rodriguez learn of these conflicts? In his petition, which was, of course, signed under oath, he alleged, and this is on page four of the excerpts of record, at no time was the defendant informed nor did he learn that the law firm providing his representation was concurrently representing KPMG until after the conclusion of the trial. On that particular point, you heard counsel who argues that at no time did the firm represent KPMG. They represented clients of KPMG, but not the entity itself. I believe the declaration filed by the government with respect to the representation of KPMG represented that as a billing of KPMG. That is, they were undertaking this representation for KPMG. KPMG was the entity that actually employed the firm. What's remarkable about this, Your Honor, is that the way that the client learned about the conflict was after the trial was over, he says to his lawyer, will you represent me in my lawsuit against KPMG for negligence? And his lawyer tells him, I can't do that because we have a conflict. Now, if they have a conflict when the trial was over, they certainly had a conflict while the trial was going on and the client was never told about it. And likewise, with respect to the RTC conflict, he never learned about that until after the trial was over. Now, there's enough alleged in here to at least call for a hearing, to at least call for an explanation of what's going on here? Why wasn't the client told? What impact did this have on the representation? When counsel says we had an evidentiary hearing, the evidentiary hearing was conducted under the Strickland standard and the judge did not allow us to go into the conflict issue at all. Counsel, I have one technical question with respect to the KPMG allegations. Counts 15 through 19, as I understand it, were all reversed on appeal. They're not involved in this, in the case before us, are they? Those were the tax counts. I'm not sure that they were reversed on appeal. I need to check that. All right. Well, the record will disclose it, but that was the impression we got. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Wallace, Hall, O'Scannlain